IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| ROBERT O. BIRDWELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-1956-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| CHRISTOPHER LARSEN; ROBIN L. D'AGATI; DALE R. KOCH; STATE OF OREGON; CITY OF PORTLAND, OREGON; MULTNOMAH COUNTY, OREGON; JOHN DOES 1-500, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

    Robert O. Birdwell
    813 N. E. 133rd Street
    Vancouver, Washington 98685

        Pro Se Plaintiff

    Linda M. Wicks
    Department of Justice
    Trial Division
    1162 Court Street, N. E.
    Salem, Oregon 97301

Page 1 - OPINION AND ORDER

> J. Scott Moede
> City of Portland
> City Attorney's Office
> 1221 S. W. Fourth Avenue, Suite 430
> Portland, Oregon  97204
>
>     Attorneys for Defendants

KING, Judge:

Plaintiff Robert O. Birdwell alleges the remaining defendants in the case, State of Oregon, Judges Christopher Larsen and Dale Koch, Robin D'Agati, and Multnomah County, are liable to him under several causes of action arising out of his traffic citation for executing an illegal U-turn.  Before me is the Motion to Dismiss filed by the State of Oregon, Judges Larsen and Koch, and D'Agati ("State defendants") (#18).  For the reasons stated below, I grant the motion and dismiss Birdwell's complaint against the State defendants.

## BACKGROUND

I dismissed the City of Portland by Opinion and Order on February 28, 2006.  For ease of reference I reiterate here Birdwell's factual allegations as I reported them in that Opinion and Order, although I have included additional facts that are relevant to the State defendants' motion.

A police officer with the Portland Police Bureau ticketed Birdwell for executing an illegal U-turn on April 22, 2004.  Birdwell entered a plea of not guilty, filing an eleven-page brief arguing that the statute prohibiting U-turns at a signalized intersection unless otherwise posted, ORS 811.365, is unconstitutional.  Birdwell received notice of a court proceeding scheduled for September 15, 2004.  Birdwell attended that hearing where he cross-examined the police officer. Christopher Larsen, Multnomah County Circuit Court Judge Pro Tem, who was presiding over

the case, had not seen Birdwell's eleven-page brief until Birdwell began cross-examining the police officer, at which time Robin D'Agati, Judge Larsen's clerk, handed the brief to him. The hearing was set over until September 21, 2004.

Birdwell suffered a heart attack on September 20, and his wife informed the court of this event on the morning of September 21. On September 21, 2004, a judgment was entered against Birdwell in the Circuit Court of the State of Oregon for Multnomah County. Birdwell filed a Motion to Vacate the Judgment in October of 2004. Birdwell received an explanatory statement from the court entitled Filing a Motion for Relief from Failure to Appear Judgment on a Traffic Citation.

On November 4, 2004, Judge Larsen denied Birdwell's Motion to Vacate the Judgment. He explained in his letter ruling that at the proceeding on September 15, 2004, after hearing argument and testimony, he took the case under advisement to consider Birdwell's constitutional challenges. He informed the parties at that time that he would make his ruling orally from the bench at a Further Proceedings Hearing scheduled for September 21, 2004. At the September 21, 2004, the officer appeared and Birdwell did not. No additional testimony or evidence was presented. Judge Larsen denied Birdwell's constitutional challenges, and entered a finding of guilt based on the evidence presented at the September 15th hearing. Judge Larsen reiterated in his letter that Birdwell was not convicted because of his failure to appear on September 21. Birdwell states that he intended to continue cross-examining the officer, and intended to offer argument on his constitutional theories at the hearing on September 21.

Birdwell sent an eight-page e-mail to Judge Larsen, which contained Birdwell's thoughts after receiving Judge Larsen's letter clarifying the ruling. Judge Dale Koch, Presiding Judge for

Page 3 - OPINION AND ORDER

Multnomah County Circuit Court, replied with a letter to Birdwell instructing him to send any future correspondence to Judge Koch who would review it to determine whether it was appropriate to forward to Judge Larsen.

As relevant to the remaining defendants, Birdwell complains generally that in Oregon, unlike all the surrounding states, it is illegal to make a U-turn at a signalized intersection unless otherwise posted. Birdwell lives in Washington State and was unaware of Oregon's law until he was ticketed. Birdwell challenges the lack of notice associated with the law, arguing that the Oregon legislature and staff at the Oregon Department of Transportation knows the law conflicts with "the uniform rules of the road," and creates a dangerous driving environment for the uninformed public. Birdwell also challenges the process he underwent prior to his conviction. Specifically, he alleges he was deprived of a jury trial or bench trial, alleges that Judge Larsen improperly went off the record to encourage negotiations between police officers and the people who had allegedly committed traffic violations, that D'Agati failed to provide Birdwell's memo to the judge prior to the hearing, that a judgment for failure to appear was improperly entered against him and then improperly changed in a *post hoc* fashion by Judge Larsen, and that Judge Koch intended to intimidate Birdwell with his letter directing Birdwell to send all future correspondence to him rather than Judge Larsen.

Birdwell has not filed a response to the State defendants' motion to dismiss.

## LEGAL STANDARDS

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims. Kokkonen v.

Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  A Rule 12(b)(1) motion may attack the substance of the complaint's jurisdictional allegations even though the allegations are formally sufficient.  St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).

A motion to dismiss under Rule 12(b)(6) will only be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. l986), cert. denied, 479 U.S. 1054 (1987).  The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party.  Cassettari v. Nevada County, Cal., 824 F.2d 735, 737 (9th Cir. 1987).

Before dismissing a *pro se* complaint, the court should instruct the *pro se* litigant as to the deficiencies in the complaint and grant leave to amend.  Eldridge v. Block, 832 F.2d 1132, 1136 (9th Cir. 1987).  However, the court may dismiss a *pro se* complaint outright when it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980).

## DISCUSSION

I.      State of Oregon

In his first cause of action, Birdwell seeks a declaration that ORS 811.365 violates the due process clause of the Fourteenth Amendment, and seeks to enjoin the State of Oregon from enforcing the statute.  In his ninth cause of action, Birdwell alleges that the State of Oregon has engaged in a pattern of racketeering activity, presumably in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), or is responsible for its employees' corrupt activities.

This court lacks subject matter jurisdiction over the State of Oregon because it is immune under the Eleventh Amendment to the United States Constitution.  The Eleventh Amendment bars a citizen from bringing suit against his own state in federal court.  Micomonaco v. State of Washington, 45 F.3d 316, 319 (9th Cir. 1995).  There are two exceptions to the Eleventh Amendment protection:  (1)  Congress can abrogate the Eleventh Amendment without the consent of the states in certain situations; and (2) a state may waive its immunity by consenting to suit in federal court but must do so by "the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction."  Id.

Neither of the two noted exceptions to Eleventh Amendment immunity from suit apply.  I note that the State of Oregon has not consented to suit here.  Furthermore, I have explored potentially applicable statutes by which Congress may have eliminated the State's immunity and have found none relevant.

First, although he does not specifically allege as much, Birdwell might base his first cause of action on 42 U.S.C. § 1983, the statute that provides a remedy for constitutional violations.  Even in enacting this statute, however, Congress did not eliminate the State's immunity from suit in federal court.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court has determined that a State is not a "person" within the meaning of Section 1983, and therefore Congress has not abrogated the State's Eleventh Amendment

Page 6 - OPINION AND ORDER

immunity to actions in federal court.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 64-66 (1989).

As for Birdwell's ninth cause of action, RICO does not override a state's sovereign immunity.  See Bair v. Krug, 853 F.2d 672, 674 (9th Cir. 1988); Production & Leasing, Ltd. v. Hotel Conquistador, Inc., 709 F.2d 21, 21-22 (9th Cir. 1983).

Accordingly, I dismiss the State of Oregon from this action because the court lacks subject matter jurisdiction.[1]

II.     Individual Defendants

Birdwell asserts his second through eighth causes of action against Judge Larsen, D'Agati, and Judge Koch.  Generally, Birdwell alleges that Judge Larsen committed mail fraud when he provided notice of the September 15th court proceeding when Judge Larsen "was fully aware that what would actually occur in the court he controlled and operated would not even closely resemble a 'COURT PROCEEDING' under American law."  Complaint at 70, ¶ 87.  Birdwell also alleges that Judge Larsen and D'Agati committed various federal and state crimes, including obstruction of governmental administration, abuse of public office, and coercion, as well as violating RICO, when Judge Larsen and D'Agati went off the record, and encouraged

---

[1]To the extent Birdwell is seeking prospective injunctive relief, I note that Birdwell may have been entitled to bring suit against a named official of the State of Oregon.  Edelman v. Jordan, 415 U.S. 651, 664 (1974) (explaining the exception to the Eleventh Amendment described in Ex Parte Young, 209 U.S. 123 (1908), permitting a suit against the Attorney General of Minnesota seeking to prohibit him from enforcing a statute alleged to be unconstitutional).  Nevertheless, Judge Larsen has already found ORS 811.365 to be constitutional, and Birdwell did not appeal that decision to the Oregon Court of Appeals.  As a result, this court has no subject matter jurisdiction over that issue.  See Noel v. Hall, 341 F.3d 1148, 1154 (9th Cir. 2003) (explaining application of the *Rooker-Feldman* doctrine to cases where plaintiff seeks direct appeal from the final judgment of a state court; only United States Supreme Court has jurisdiction over such decisions).

Page 7 - OPINION AND ORDER

negotiations between the alleged traffic violators and six "armed" police officers, with the intention of "intimidat[ing], [and] dominat[ing]" the violators to negotiate a deal. Complaint at 70-71, ¶ 88.

Birdwell alleges that Judge Larsen and D'Agati violated RICO and the Hobbs Act when they "extort[ed] property in the form of guaranteed rights and money from at least ten citizens." Complaint at 72, ¶ 89(ii). He alleges that Judge Larsen and D'Agati violated RICO, committed mail fraud, and abuse of public office for permitting the judgment for failure to appear to be entered against him, and then allowing a copy of the "fraudulent" judgment to be sent through the mail to him. He alleges Judge Larsen violated RICO, committed mail fraud, and abuse of public office when Judge Larsen sent out a letter clarifying his ruling. Birdwell alleges Judge Larsen purposely ended the September 15th hearing early, knew that Birdwell had suffered a heart attack, and attempted to eliminate Birdwell's case as quickly as possible.

In the only cause of action asserted solely against D'Agati, Birdwell alleges D'Agati violated RICO and committed obstruction of justice when she "unlawfully concealed" from Judge Larsen the brief Birdwell had filed. Complaint at 73, ¶ 90(ii).

Finally, Birdwell alleges that Judge Koch violated RICO, committed obstruction of justice, mail fraud, and abuse of public office when he sent a letter to Birdwell directing Birdwell not to contact Judge Larsen directly. Birdwell asserts that Judge Koch intended to intimidate him by the letter. Birdwell also asserts that all causes of action are also made against Koch as an accessory after the fact

Judges are immune from liability for a money damages suit for "acts committed within their judicial jurisdiction." Harvey v. Waldron, 210 F.3d 1008, 1012 (9th Cir. 2000) (quoting

Page 8 - OPINION AND ORDER

Pierson v. Ray, 386 U.S. 547, 553-54 (1967)); Mireles v. Waco, 502 U.S. 9, 11 (1991). A judge is not immune for action taken outside of the judge's judicial capacity or for judicial actions taken in the complete absence of all jurisdiction. If the judge has jurisdiction to perform the "general act" in question, the judge is immune if the act is erroneous, if the act has consequences that injure the plaintiff, and irrespective of the judge's motivation. Harvey, 210 F.3d at 1012. "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." Stump v. Sparkman, 435 U.S. 349, 362 (1978).

The Supreme Court has held a judge immune even when the judge allegedly ordered police officers "to forcibly and with excessive force seize and bring plaintiff [attorney] into his courtroom." Mireles, 502 U.S. at 10. In finding the judge was entitled to immunity, the Court "look[ed] to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court." Id. at 13. The Court explained its rationale as follows:

> Of course, a judge's direction to police officers to carry out a judicial order with excessive force is not a "function normally performed by a judge." But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority."

Id. at 12-13 (internal citations omitted).

Page 9 - OPINION AND ORDER

The "general act[s]" that Judge Larsen performed are functions he has jurisdiction to perform.  Judge Larsen (or his staff) sent out notice of the September 15th court proceeding, Judge Larsen permitted and even encouraged negotiations to take place between the alleged violators and the police officers, he accepted plea deals from at least ten individuals, he ended Birdwell's hearing, he (or his staff) mailed Birdwell's judgment to him, and he clarified his ruling via letter.  These are all functions that are normally performed by a judge.  See ORS 1.600(3) (judge pro tempore has "all the judicial powers" of an elected judge); ORS 1.130 ("A court or judicial officer has power to adjourn any proceedings before the court or the judicial officer, from time to time, as may be necessary, unless otherwise expressly provided by statute"); ORS 3.070 ("Any judge of a circuit court in any judicial district may, in chambers, . . . make findings and decide motions. . ."); ORS 1.160 (judge has "all the means" to carry jurisdiction into effect by "any suitable process").  As a result, Judge Larsen is entitled to judicial immunity from this suit.

Similarly, Judge Koch's action in sending Birdwell a letter instructing Birdwell to send any future correspondence to Judge Koch for review is covered by judicial immunity.  The impetus for Judge Koch's letter was Birdwell's eight page e-mail to Judge Larsen, which contained Birdwell's thoughts after receiving Judge Larsen's letter clarifying the ruling.[2]  Judge Koch's letter indicates that he was concerned about Birdwell's ex parte contact with Judge Larsen.  Ensuring that no ex parte contacts occur between the judge assigned to a case and one of

---

[2]Some of the milder declarations in Birdwell's e-mail to Judge Larsen include the following: "I could cite you an enormous body of law and cases, but under these circumstances, that would be like pouring perfume on a pig" and "You can have somebody read the federal complaint to you when I have it served upon you."  Complaint, Exhibit Thirteen, at 8.

Page 10 - OPINION AND ORDER

the parties is a judicial function. Indeed, Judge Koch, as Presiding Judge for Multnomah County Circuit Court, is authorized by statute to: "(a) Apportion and otherwise regulate the disposition of the judicial business of the circuit of the judicial district; and (b) Make rules, issue orders and take other action appropriate to that exercise." ORS 1.171. Judge Koch is entitled to judicial immunity for the letter he sent to Birdwell.

As for whether Judge Koch can be held liable as an "accessory after the fact" for the actions of Judge Larsen, I note that 18 U.S.C. § 3 contains no private right of action under which Birdwell can sue Judge Koch. The language of the statute defines an accessory after the fact to be one who assists an offender "knowing that an offense against the *United States* has been committed." 18 U.S.C. § 3 (emphasis added). From this language, it is apparent that Congress did not intend to permit individuals to enforce the statute in a civil realm. See Thompson v. Thompson, 484 U.S. 174 (1988) (unless legislative intent can be inferred from language of statute, or some other source, a private remedy will not be implied).

D'Agati is similarly entitled to judicial immunity. D'Agati, as a clerk who "perform[s] a ministerial duty which [is] a part of judicial process[,] is also clothed" with judicial immunity. Morrison v. Jones, 607 F.2d 1269, 1273 (9th Cir. 1979). According to Birdwell's allegations, it was apparently D'Agati who was responsible for maintaining the files for Judge Larsen and for providing filed documents to him. Consistent with this allegation, state law makes the "office of the clerk or court administrator of the respective trial . . . court" the "custodian of and responsible for . . . records and files" of the court. ORS 7.110(1). As explained above, even if I accept Birdwell's allegation that D'Agati acted with a nefarious intention in keeping the document from Judge Larsen until Birdwell appeared before them, she is still entitled to the immunity as it

applies without regard to her motivation in performing the action. Indeed, "[b]ecause a law clerk is probably the one participant in the judicial process whose duties and responsibilities are most intimately connected with the judge's own exercise of the judicial function," D'Agati is entitled to judicial immunity. <u>Moore v. Brewster</u>, 96 F.3d 1240, 1245 (9th Cir. 1996).

Any claim against Judges Larsen and Koch, and D'Agati is barred by judicial immunity.

III.   <u>Summary</u>

I find that this court has no subject matter jurisdiction over any claims made against the State of Oregon. I also find that Birdwell has failed to state any claims for relief against Judges Larsen and Koch, and D'Agati because these defendants are entitled to judicial immunity. The defects cannot be cured by amendment.

## CONCLUSION

The Motion to Dismiss filed by the State of Oregon, Christopher Larsen, Robin D'Agati, and Dale Koch (#18) is granted.

IT IS SO ORDERED.

Dated this       6th       day of April, 2006.

                                                      /s/ Garr M. King
                                                     Garr M. King
                                                     United States District Judge